# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KATHERYN CLOVER, *et al.*, | Case No. 1:22-cv-559 |
| Plaintiffs, | Judge J. Philip Calabrese |
| v. | Magistrate Judge William H. Baughman |
| ANTHONY VIOLA, | |
| Defendant/Third Party Plaintiff, | |
| v. | |
| DANIEL KASARIS, *et al.*, | |
| Third-Party Defendants. | |

## OPINION AND ORDER

This matter is before the Court on the motion to dismiss filed by the United States. (ECF No. 11.) Plaintiffs filed this action seeking to have Mr. Viola declared a vexatious litigator pursuant to Section 2323.52 of the Ohio Revised Code. This declaration would prohibit him from instituting any new action in any Ohio court. Mr. Viola filed an answer, a counterclaim and a third-party complaint against former Assistant United States Attorney Mark Bennet, Ohio Bureau of Investigation Special Agent Arvin Clar, former Assistant Cuyahoga County Prosecutor Daniel Kasaris, and Criminal Defense Attorney Jay Milano, asserting claims for civil conspiracy under Section 2923.02 of the Ohio Revised Code and

negligence. The United States removed this action to federal court and moved to substitute the United States as the proper party.

Then, the United States moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant asserts that Mr. Viola's two State-law tort claims arise, if at all, under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). It contends that Mr. Viola has not alleged facts to demonstrate all elements of a cause of action under the Act and failed both to exhaust his administrative remedies and meet the time-limitation requirements. For the reasons more fully explained below, the Court grants Defendant's motion and dismisses the third-party complaint under Rule 12(b) and under *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

## STATEMENT OF FACTS

Mr. Viola's allegations against Mr. Bennett and the other Third-Party Defendants stem from his criminal prosecutions in federal and State court that resulted from a multi-jurisdictional Mortgage Fraud Task Force investigation. Special Agent Clar chaired the Task Force. Mr. Viola and six co-defendants were indicted in 2008. Mr. Viola was convicted in federal court in April 2011 on thirty-three counts of wire fraud and two counts of conspiracy. *See United States v. Viola*, No. 1:08 cr 506 (N.D. Ohio Apr. 1, 2011). In January 2012, he was sentenced to 150 months in prison. *Id.* Mr. Bennett was one of the assistant United States Attorneys who prosecuted Mr. Viola's case.

Mr. Viola and his co-defendants were also indicted in State court on charges pertaining to the same incidents and involving the same victims. Mr. Viola was

2

acquitted in 2012; however, his co-defendants were convicted. Mr. Katsaris was the Cuyahoga County Prosecutor assigned to the case. Mr. Viola contends that evidence withheld during his federal trial was introduced at his State trial and resulted in his acquittal. Further, he contends that Special Agent Clar falsely testified in an affidavit that the Task Force did not house evidence or receive federal funds. He claims this affidavit hindered his pursuit of post-conviction remedies.

Plaintiff Katheryn Clover was also indicted as a participant in the same mortgage fraud scheme as Viola but was tried separately. *See United States v. Clover*, No. 1:10-cr-00075 (N.D. Ohio) (indictment filed Oct. 23, 2010). She entered into a plea agreement shortly after her indictment in which she pled guilty to two counts of conspiracy and agreed to cooperate with the United States in exchange for the government's agreement to forego seeking indictment for other mortgage fraud charges. On October 4, 2011, she was sentenced to four years of probation with the first ten months to be served on home confinement. Mr. Viola alleges that Mr. Kasaris had an intimate relationship with Ms. Clover. He indicates that Mr. Bennett and Mr. Milano knew of the relationship and failed to disclose it. He also contends that Ms. Clover committed perjury, but Mr. Bennett did not withdraw her testimony.

Mr. Viola also alleges that Bennett misled the trial court into believing that Mr. Viola signed a waiver of a conflict of interest. The alleged conflict arose when Ms. Clover's attorney, Michael Goldberg, also agreed to represent Viola's Co-

Defendant Uri Gofman. Judge Donald C. Nugent presided over Mr. Viola's criminal case in federal court and specifically addressed this claim:

> Neither the government nor this Court has ever represented that Mr. Viola executed a written conflict waiver or that any hearing was held to discuss a potential or actual conflict of interest involving Mr. Viola or his counsel. There was discussion in open court about a potential conflict of interest involving attorney Michael Goldberg, counsel for Mr. Viola's co-defendant, Uri Gofman based on his previous representation of another co-defendant, Kathryn Clover. This potential conflict did not involve Mr. Viola or either of his attorneys. Further, this Court's reference to a waiver of potential conflict arising from the joint defense agreement between the co-defendants who went to trial, which was contained in the July 24, 2015 Order that is vacated through this Order has been misconstrued by Mr. Viola. Although there was no formal waiver of potential conflict, Mr. Viola knowingly participated in and benefitted from the joint defense agreement and never made any objection to this Court. Further, he was represented by his own separate counsel. Therefore, there is no indication that an actual conflict of interest existed, and any potential conflict was waived by his knowing acceptance of the arrangement and his failure to object to the agreement at any time prior to or during his trial. For these reasons, Mr. Viola's Motion to Compel Production of Conflict of Waiver and Transcript from Waiver Hearing, (ECF #492), is DENIED.

*United States v. Viola*, No. 1:08 cr 506 (N.D. Ohio Apr. 1, 2011) (ECF No. 496, PageID #10661.)

## STATEMENT OF THE CASE

In his third-party complaint, Mr. Viola asserts two claims. First, he asserts that each of the Third-Party Defendants engaged in a civil conspiracy to conceal their own criminal activities that caused injury to him. Second, he asserts that the Third-Party Defendants owed him a duty and did not fulfil that duty. He claims that they were negligent. He seeks compensatory and punitive damages and an order requiring

4

Mr. Bennett and Mr. Milano to report the criminal activity of Mr. Kasaris to law enforcement.

## GOVERNING LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). When determining whether the plaintiff has stated a claim on which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), the Supreme Court further explained the plausibility requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Further, "the plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## ANALYSIS

In its motion to dismiss, the United States contends that Mr. Viola's tort claims against Mr. Bennett arise, if at all under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). It asserts that Mr. Viola fails to state a claim on which relief may be granted under this statute. The Westfall Act immunizes federal employees from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. § 2679(b)(1). Where a federal employee acts within the scope of his employment and commits a tort, any relief for that tort must be sought against the United States under the FTCA, which provides the exclusive jurisdictional basis for tort claims against the United States and its employees.

As a sovereign, the United States is immune from suit unless it explicitly waives its immunity. *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941). By enacting the FTCA, Congress waived the sovereign immunity of the United States under very limited circumstances for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1) & 2679(d)(1); *United States v. Orleans*, 425 U.S. 807, 813 (1976). Congress defined the exact terms and conditions on which the government may be sued, and the terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against the United

States. *Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501 (1967).

The parameters Congress placed on these tort claims dictate that they are barred unless they are presented in writing to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b). The timely filing of an administrative claim is a requirement of the FTCA. If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed. *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008).

The United States asserts that Mr. Viola did not file an administrative claim and is now time-barred from doing so. Indeed, there is no indication that Mr. Viola exhausted his administrative remedies. Because exhaustion of administrative remedies is an absolute, unwaivable prerequisite to pursuing a claim under the FTCA and is a condition of the waiver of sovereign immunity, the Court must dismiss Mr. Viola's claims against the United States.

Further, although the Court could simply dismiss the United States as a party and remand the remainder of the action to State court, doing so would not be in the interest of justice or promote judicial economy. Instead, the Third-Party Complaint should be dismissed in its entirety.

As an initial matter, a third-party pleading is appropriate only where the Third-Party Defendant's liability to the Third-Party Plaintiff is dependent on the outcome of the main claim in the original complaint. Ohio R. Civ. P. 14(A); *State ex rel. Jacobs v. Municipal Ct. of Franklin Cnty.*, 30 Ohio St. 2d 239, 241-42, 284 N.E.2d 584 (1972); *see also American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d

7

800, 805–06 (6th Cir. 2008) (stating the same for Fed. R. Civ. P. 14). In other words, a third-party complaint is permitted only where the original defendant is attempting to transfer the liability asserted against him by the original plaintiff to a third party who is not already a party to the action. Conversely, a defendant's claim against a third-party defendant cannot be simply an independent or related claim but must be based on the original plaintiff's claim against the original defendant.

In this case, the original complaint seeks to have Mr. Viola declared a vexatious litigant under Section 2323.52 of the Ohio Revised Code. It does not contain a request for damages and is not the type of action for which Mr. Viola could seek indemnity from others. In fact, he asserts claims that are entirely unrelated to the original complaint. The third-party pleading is not appropriate under Rule 14 of the Ohio Rules of Civil Procedure or the Federal Rules of Civil Procedure.

Moreover, Mr. Viola appears to have filed his third-party claims for the improper purpose of harassing individuals connected to his prosecutions. The issues raised in the Third-Party Complaint are not new to this Court, the United States District Court for the Southern District of Ohio, or the Ohio courts. Mr. Viola has litigated these issues against Mr. Bennett and Mr. Kasaris on at least four occasions in this Court alone. *See Viola v. Bennett*, No. 1:17 CV 456 (N.D. Ohio May 22, 2017) (dismissing under 28 U.S.C. § 1915A claims of prosecutorial misconduct pertaining to allegations that Mr. Bennett falsely informed the court that Mr. Viola waived a conflict of interest); *Viola v. Bair*, No. 1:17 CV 827 (N.D. Ohio Aug. 7, 2017) (dismissing claims against Mr. Bennett, Mr. Kasaris, and Ms. Clover); *Viola v. Ohio*

*Attorney General*, No. 1:20 CV 765 (N.D. Ohio Feb. 11, 2021) (dismissing claims against Mr. Kasaris, Mr. Bennett, and other defendants and cautioning Mr. Viola that he may considered a vexatious litigant if he continues to file new actions based on the same facts and incidents); *Viola v. Cuyahoga Cnty. Land Reutilization Corp.*, No. 1:21 CV 1196 (N.D. Ohio Oct. 28, 2021) (dismissing claims against Mr. Bennett concerning a conflict-of-interest waiver).

In the last action, the Court also declared Mr. Viola a vexatious litigant and enjoined him from filing future actions in the Northern District of Ohio without prior leave of court after Mr. Bennet produced copies of emails Mr. Viola sent to him threatening to file multiple lawsuits. One such email has the subject line, "Another lawsuit for you Mark!" and states:

> Before he passed away, I promised my Father I'd sue you over your 'award'—where you couldn't help yourself & had to trash our family name and further upset my parents . . . that suit was mailed earlier, here's an email of a new one! We have some initial discovery in this case for you as well. Unless I hear otherwise, I'll send this to you directly, unless you tell me you have an attorney and I should arrange service with counsel.
>
> Also, your cover up of the Kasaris-Clover affair and use of her perjured testimony to 'win' convictions is one of the subjects of oral arguments in the Ohio Court of Appeals in July, we'll post the audio on our website after the court proceedings.

*Viola v. Cuyahoga Cnty. Land Reutilization Corp.*, No. 1:21 CV 1196 (N.D. Ohio Oct. 28, 2021) (ECF No. 24-2, PageID #248). One week later, Mr. Viola sent another email to Mr. Bennett, with the subject line "New 1983 Action," stating:

9

> I'm working on a new 1983 suit that follows the FBI and Justice Department claims that Special Agent Jeff Kassouf failed to provide over 10,000 pages of records in my case until 2021.
>
> I'm alleging a criminal conspiracy between you, Dan Kasaris and Agent Kassouf to hide evidence in my case because what was just produced is highly exculpatory.
>
> If you have an attorney, please have them contact me. I believe the time has come for you to admit you covered up the Clover-Kasaris affair and join our efforts . . . if we don't hear back, I'll just proceed finalizing the litigation and get you a service copy.

(*Id.* (ECF No. 24-2, PageID #249).)

Judge Marbley also declared Mr. Viola a vexatious litigator in the United States District Court for the Southern District of Ohio and permanently enjoined Mr. Viola from filing additional lawsuits in the Southern District of Ohio Court. *See Viola v. Yost,* No. 2:21 CV 3088 (S.D. Ohio Mar. 4, 2022). Judge Marbley stated that Mr. Viola had filed a previous action against Mr. Kasaris under the First Amendment after Mr. Kasaris sent him a cease-and-desist letter pertaining to a website Mr. Viola maintained that accused him of unethical and illegal practices. *Id.* Then, Mr. Viola mass-mailed post cards to North Royalton residents on at least two occasions further publicizing claims that Mr. Kasaris had a romantic relationship with Ms. Clover and accusing him of incest and other crimes. *Id.* Mr. Kasaris was a city councilman for North Royalton. *Id.* He sent Mr. Viola another cease-and-desist letter, and Mr. Viola filed a second lawsuit. Citing opinions in *Viola v. Bair*, No. 1:17 CV 827 (N.D. Ohio Aug. 7, 2017), and *Viola v. Cuyahoga Cnty. Land Reutilization Corp.*, No. 1:21 CV 1196 (N.D. Ohio Oct. 28, 2021), Judge Marbley stated: "This case, like those

preceding it, presents salacious allegations while ignoring repeated court rulings that foreclose the relief sought. The Court determines that this case too was filed for an improper purposed, namely 'to harass' Defendant Kasaris and his private counsel, Defendant Billak." *Viola v. Yost*, No. 2:21 CV 3088 (S.D. Ohio Mar. 4, 2022) (ECF No. 59, PageID #1798).

Although the Court is required to construe Plaintiff's *pro se* filings liberally and to hold them to a less stringent standard than one drafted by an attorney, *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), the Court is permitted to conduct a limited screening procedure and to dismiss, *sua sponte*, a pleading filed by a non-prisoner if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). At the very least, the claims in this Third-Party Complaint are no longer open for discussion.

Mr. Viola's Third-Party Complaint is barred by *res judicata*. "*Res judicata*" literally means "a matter [already] judged." The doctrine of *res judicata* bars duplicative litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). When one court has already resolved the merits of a case, the doctrine of *res judicata* bars another court from revisiting them. *Id.* Therefore, the doctrine precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner &*

11

*Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the Court and every issue or defense that should have been raised in the previous action. *Id.* Mr. Viola has litigated multiple claims against the Third-Party Defendants in multiple actions and has received decisions on the merits of those claims. He cannot continue to harass these individuals by proceeding in this Court with yet another lawsuit against them.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS** the Motion to Dismiss of the United States (ECF No. 11). Further, the Court **DISMISSES** the Third-Party Complaint in its entirety pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this decision could not be taken in good faith.

This case shall proceed solely on Plaintiff's original complaint seeking to have Mr. Viola declared a vexatious litigator in State court. Because there is no basis for federal jurisdiction over that action, and because the State court is in the best position to determine whether Mr. Viola should be barred from filing additional pleadings in the Ohio courts, this case is remanded to the Cuyahoga County Court of Common Pleas.

**SO ORDERED.**

Dated:  June 22, 2022

                                             J. Philip Calabrese
                                             United States District Judge
                                             Northern District of Ohio